**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BLERIM SKORO,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**ARTHUR J. WILSON, et al.,**<br><br>**Respondents.** | **Civil Action No. 26-9818 (RK)**<br><br>**MEMORANDUM OPINION** |

This matter is before the Court on Petitioner's filing of an Amended Petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. For the reasons set forth below, the Court denies the Amended Petition without prejudice with respect to Petitioner's detention-related claims. However, should Respondents seek to remove Petitioner to any third country, they shall provide effective notice of no less than 10 days in advance of any prospective removal, to Petitioner and his counsel of the specific country to which they intend to remove him and shall provide a meaningful opportunity to present any country-specific fear of persecution claims.

## I. RELEVANT BACKGROUND

Petitioner is a citizen of Kosovo. (ECF No. 9 at ¶ 16.) On or about May 22, 2000, Petitioner was paroled into the United States for criminal prosecution. (ECF No. 14-1, Ans. Ex. A (Notice to Appear).) On March 6, 2002, he was convicted of Conspiracy to Import One Kilogram or More of Heroin into the United States in violation of Title 21 U.S.C. §§ 963 and 960(b)(1)(A). (Ans. Ex. A; ECF No. 14-2, Ans. Ex. B (U.S. District Court for the Eastern District of New York Judgment Including Sentence).) Petitioner was sentenced to an eighty-four-month term of imprisonment. (*Id.*)

On June 13, 2006, ICE initiated removal proceedings against Petitioner by issuing a Notice to Appear ("NTA"). (Ans. Ex. A.) Petitioner was charged with four grounds of inadmissibility under Section 212 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182. (*Id.*) Petitioner was subsequently ordered removed from the United States on July 16, 2007. (ECF No. 14-3, Ans. Ex. C (July 16, 2007, Removal Order).) On or about December 10, 2007, Petitioner was removed from the United States. (ECF No. 14-4, Ans. Ex. D (Form I-205, Warrant of Removal/Deportation); ECF No. 14-5, Ans. Ex. E (April 25, 2016, Notice of Intent/Decision to Reinstate Prior Order).)

Petitioner subsequently reentered the United States on an unknown date and at an unknown location. (Ans. Ex. E.) On April 25, 2016, ICE served Petitioner with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, which reinstated his prior removal order pursuant to 8 U.S.C. § 1231(a)(5). (*Id.*) Petitioner asserted a fear of persecution or torture should he be returned to his home country, which was reviewed by an asylum officer. (ECF No. 14-6, Ans. Ex. F (Notice of Referral to Immigration Judge).) On May 11, 2016, Petitioner was referred to the immigration judge for a determination in accordance with 8 CFR § 208.31(e). (*Id.*) Petitioner contends, and Respondents do not dispute, that Petitioner was released on bond while his proceedings before the immigration judge were pending, and he was not subject to any conditions of supervision. (ECF No. 9, Amended Pet. at ¶¶ 4, 16.) On November 9, 2022, Petitioner was granted Deferral of Removal under the Convention Against Torture ("CAT") by the immigration judge. (ECF No. 14-7, Ans Ex. G (Order of the Immigration Judge).)

In his declaration, Petitioner avers that he has "worked for the CIA, the Federal Bureau of Investigation and the United States Drug Enforcement Agency over the course of nearly a decade" and that his "career as a CIA agent came to an abrupt end as a result of an assassination attempt

on [his] life while working for the CIA in Eastern Europe and the Middle East." (ECF No. 10, Skoro Declaration ("Skoro Decl.") at ¶¶ 2-6.) Since the Immigration Court granted CAT relief, he has worked up to 70 hours per week as a driver to support his wife and children who are United States citizens; he also avers that he has paid taxes since 2016 and held an employment authorization. (*Id.*)

Petitioner applied to renew his employment authorization with USCIS, which issued an appointment notice for Petitioner to get fingerprinted on August 3, 2026; at that appointment, Petitioner was detained without warning by Immigration and Customs Enforcement ("ICE"). (*Id.* at ¶ 6; ECF No. 9-6.) He has been detained at Elizabeth Detention Facility since that date. (ECF No. 9, Amended Pet. at ¶ 16.)

The parties appear to agree that Petitioner is detained due to his removal order but dispute whether he can be removed to a third country. Petitioner alleges the following regarding his potential removal to a third country: "I believe I will be killed if I am removed to any third country based on my work infiltrating global terrorist networks." (Skoro Decl. at ¶ 9.)

Petitioner filed his original petition and a Motion for a Temporary Restraining Order ("TRO Motion") on August 4, 2026, and the Court ordered an expedited answer but denied the TRO Motion on August 12, 2026. (ECF Nos. 1-2, 6.) Petitioner filed an Amended Petition on August 17, 2026, raising six claims for relief. (ECF No. 9, Amended Petition at ¶¶ 58-87; *see also* ECF Nos. 10-11.) The Amended Petition seeks his immediate release from detention and related relief. (*Id.* at p. 24-25.) Respondents filed an expedited answer on August 20, 2026, and Petitioner filed a reply brief on August 24, 2026, followed by a letter on September 11, 2026. (ECF Nos. 14, 15-16.) The matter is briefed and ready for disposition.

## II. DISCUSSION

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

Petitioner raises a number of claims challenging the lawfulness of his detention. First, Petitioner raises a statutory challenge to his detention (ECF No. 9, Amended Petition at ¶¶ 58-60) and argues that 8 U.S.C. § 1231(a) does not provide "Respondents with the authority to detain him years after an order of deferral of removal under CAT is issued." (*See* ECF No. 11, at 2-5 (case citations omitted).) At least one Court in this District has so held. *See De Aguiar v. Rokosky*, No. 2:25-CV-18581 (MEF), 2026 WL 1123571 at * 1 (D.N.J. Apr. 17, 2026) (holding that "Section 1231 does not supply a basis for the Petitioner's current detention, so the authority for that detention, if it exists, must derive from 8 U.S.C. § 1226").

In his reply brief, Petitioner also contends that Respondents fail to meaningfully address this issue and seeks his immediate release on that basis. (ECF No. 15 at 7.) But as the Third Circuit has explained, "[e]ven if the Government [has] failed to respond to [a habeas petition], it does not follow that [a petitioner] is entitled to a default judgment." *In re West*, 591 F. App'x 52, 54 n.3 (3d Cir. 2015) (citing *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) (collecting cases)). Accordingly, the Court declines to grant the Petition based on the government's failure to

address all the issues and will instead analyze whether Petitioner's detention is authorized by Section 1231.

Section 1231 governs the detention of noncitizens with final orders of removal and provides that during a specified ninety-day removal period, "the Attorney General shall detain the alien." *Id.* § 1231(a)(1)(A), (a)(2)(A). Section 1231(a)(6) provides for release on an order of supervision or continued detention for certain classes of noncitizens who have not been removed at the conclusion of the 90-day removal period. This continued detention is referred to as the "post-removal-period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). At issue is whether Respondents may detain Petitioner under § 1231(a)(6) if they failed to detain him during the initial 90-day removal period.

At the latest, Petitioner's 90-day removal period began on November 9, 2022, when the immigration judge granted CAT relief to Petitioner, and expired 90 days later. It appears undisputed that Petitioner was not detained during the 90-day period after his removal order became administratively final. Petitioner argues that § 1231(a)(6) "provides for a period of continued detention for certain classes of people who have not been removed at the conclusion of the ninety-day removal period." *Diallo v. Joyce*, 817 F. Supp.3d 202, 206 (S.D.N.Y. 2025), and that this provision is inapplicable to Petitioner who was not detained during that initial 90-day period. In *Diallo*, 817 F.Supp.3d at 204–05, the District Court for the Southern District of New York held that Section 1231(a)(6) did not govern the detention of the petitioner who had a 2012 removal order and withholding of removal to Guinea because she "was never detained during the removal period, and she was never given an order of supervision at the end of it." *Id.*

Petitioner urges the Court to follow *Diallo* and *De Aguiar*. These decisions view the detention authority of § 1231(a)(6) as contingent on the government's compliance with the

statute's timing provisions, but that interpretation is inconsistent with a long line of Supreme Court decisions. Most notably, in *Nielsen v. Preap*, 586 U.S. 392, 411 (2019), a plurality of the Supreme Court held that "'if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.'" *Id.* (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003). In construing the mandatory detention language of 8 U.S.C. § 1226(c), the plurality of the Court held that even if "subsection (c)(1) require[d] immediate arrest,"

> the Secretary's failure to abide by this time limit would not cut off her power to arrest under subsection (c)(1). That is so because, as we have held time and again, an official's crucial duties are better carried out late than never. *See Sylvain v. Attorney General of U.S.*, 714 F.3d 150, 158 (3d Cir. 2013) (collecting cases). Or more precisely, a statutory rule that officials "'shall' act within a specified time" does not by itself "preclud[e] action later." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003).

*Id.* at 411. As noted by the District Court in *Diallo*, this analysis was not part of the majority's holding, which was decided on separate grounds, but this Court nevertheless finds the reasoning instructive. The *Nielsen* plurality also cited approvingly to the Third Circuit's precedential decision in *Sylvain*, which considered the same issue and held that "nothing in [Section § 1226(c)] suggests that immigration officials lose authority if they delay." 714 F.3d at 157. As the Third Circuit opined,

> [t]his principle of statutory interpretation descends from a long line of Supreme Court precedents. *See, e.g., Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 161, 123 S. Ct. 748, 154 L.Ed.2d 653 (2003); *United States v. Nashville, C & St. L. Ry.*, 118 U.S. 120, 125, 6 S. Ct. 1006, 30 L. Ed. 81 (1886). In these cases, the Court has explained that "a statute directing official action needs more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done." *Barnhart*, 537 U.S. at 161, 123 S. Ct. 748. In other words, "a provision that the Government 'shall' act within a specified time, without more, [is not] a jurisdictional limit precluding action later." *Id.* at 158, 161–63, 123 S. Ct. 748 (concluding that a provision stating that the government "shall"

> make certain assignments by "October 1, 1993," did not eliminate the government's authority to make assignments after that date).

*Id.* at 157–58.

This Court interprets the timing provisions of § 1231 in light of *Nielsen* and *Sylvain* and the precedents on which those decisions rely. As relevant here, § 1231(a)(1) provides for a 90-day period of mandatory detention, which is typically triggered by an administratively final removal order.[1] Pursuant to § 1231(a)(3), "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Section § 1231(a)(6) specifies an exception, however, which permits continued detention for inadmissible and certain other classes of noncitizens:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

(Emphasis supplied). Thus, § 1231(a)(6) permits the Attorney General to detain inadmissible noncitizens, like Petitioner, "beyond the removal period," or release them on terms of supervision. But nothing in the statute set forth a consequence for failing to detain noncitizens during the initial

---

[1] There are three possible triggers for the 90-day removal period:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

90 days or suggests that the government's power to detain under § 1231(a) is contingent on whether the noncitizen was detained during that removal period. Therefore, the government does not lose its authority to detain a noncitizen under § 1231 merely because it did so belatedly. Moreover, Petitioner's interpretation could produce rather absurd results as it would be difficult, if not impossible, to detain a noncitizen who failed to appear for his removal proceedings and was ordered removed *in absentia*. In addition, it would be a waste of resources to detain a noncitizen, such as Petitioner, who was granted withholding or deferral unless or until the government intended to remove the noncitizen to a third country. For these reasons, the Court rejects Petitioner's argument that he is not subject to detention under Section 1231(a)(6).

Petitioner next contends in various ways that his detention violates the Fifth Amendment Due Process Clause. (ECF No. 9, Amended Petition at ¶¶ 61-80.) Whether Petitioner's continued detention under § 1231 comports with the Fifth Amendment is governed by *Zadvydas*, 533 U.S. at 701, which held that the INA's post-removal-period detention provision contains an implicit reasonableness limitation of six months, after which a noncitizen may not continue to be detained if "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas* addressed the substantive due process component of the Fifth Amendment and held that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied. *See* 533 U.S. at 697.

According to Petitioner, Respondents have had more than three years to remove him since his grant of CAT relief, and he would be entitled to seek fear-based relief from removal once a third country is identified. In this proceeding, Respondents have not identified a third country to which they intend to remove Petitioner nor explained the reason they elected to detain him, relying instead on the presumption that his detention for at least six months is reasonable. *See Zadvydas*,

533 U.S. at 701 (holding that detention pursuant to Section 1231(a)(6) is "presumptively reasonable" for six months).

Under *Zadvydas*, once detention has reached the six-month mark and petitioner has shown good reason to believe his removal is not foreseeable, the burden shifts to the Government to show that there is a "significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Although the issue is unsettled, some lower courts have held that a detainee is not precluded from challenging the reasonableness of his detention before the six-month mark. *See, e.g., Munoz-Saucedo v. Pittman*, 789 F. Supp.3d 387, 395 (D.N.J., 2025) (finding that the petitioner who was previously detained and released met his burden to show that he could not be removed to his home country or a third country); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, . . . and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The six-month Zadvydas presumption is just that—a presumption . . . not a prohibition on claims challenging detention less than six months." (internal quotation marks omitted)); *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008) ("The *Zadvydas* Court did not say that the presumption is irrebuttable, and there is nothing inherent in the operation of the presumption itself that requires it to be irrebuttable."). Some lower courts in this District have granted habeas relief prior to the six-month mark of detention where the Petitioner was still in withholding-only proceedings that may last many months. *See Delcid-Santos v. Soto*, 26-1382 (SDW), 2026 WL 636814, at *2 (D.N.J. Mar. 6, 2026) (granting habeas relief prior to six months of detention where the petitioner's withholding-only proceedings case and appeal may take many months to resolve, thus delaying Petitioner's removal); *Paz Rodriguez v. Soto*, No. 26-5743 (JXN), 2026 WL 1724689, at *3 (D.N.J. Jun. 15,

2026) (finding that removal was not likely in the reasonably foreseeable future where the petitioner had been detained less than six months but his withholding-only proceedings were still pending).

Here, Petitioner has been detained under Section 1231 for less than three months and has an order granting CAT relief that bars his removal to Kosovo. This Court is mindful that "[a]n order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country. But the noncitizen still "may be removed at any time to another country where he or she is not likely to be tortured." *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) (citing 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f)). In assessing the likelihood of removal, some habeas courts have noted that removal to a third country is historically rare and may involve additional fear-based proceedings. *See, e.g., Puertas-Mendoza v. Bondi*, No. 25-CA-890, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025) (noting that "foreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country"); *Munoz-Saucedo*, 789 F. Supp. 3d at 399 (noting that third country removals have "been historically rare" and that petitioner was entitled to further proceedings to seek fear-based relief, even if a third country for removal were to be found); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025) (noting that "any efforts to remove [petitioner] to a third country would likely be delayed by proceedings contesting his removal to the third country finally identified").

However, as explained by the District Court in *Puertas-Mendoza*, 2025 WL 3142089, at *2, a noncitizen "who brings a *Zadvydas* claim before the presumptively reasonable six-month period has run will have a harder time establishing a right to relief." After the six months has run, "a detained noncitizen need only 'provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.* (citing *Zadvydas*, 533 U.S. at

701), and "the Government must respond with evidence sufficient to rebut that showing." *Id.* In contrast, "before six-month period has run, a Petitioner must . . . prove 'that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.*

Assuming that Petitioner can raise a due process challenge before the six-month period has run, the Court agrees with Respondents that Petitioner has not provided sufficient evidence that there is no significant likelihood of removal in the reasonably foreseeable future. He contends that the government has no plans to remove him and states without sufficient support his belief that his prior work as a CIA agent makes it dangerous or life-threatening to remove him to any third country. These sweeping allegations are not sufficiently supported.[2] Because Petitioner has been detained for less than three months and has not proven to the Court's satisfaction that there is no significant likelihood of removal in the reasonably foreseeable future, the Court finds that he has not shown an entitlement to relief on his due process claim. That claim is denied without prejudice to Petitioner's filing of a new Petition should his detention become unreasonably prolonged.

In connection with his due process claims, Petitioner also asks this Court to order Respondents to give Petitioner notice of any third country to which they seek to remove him and an opportunity to present fear-based challenges to his removal. (ECF No. 9, Amended Petition at ¶¶ 76-80.) In their answer, Respondents have not disclosed a third country to which they intend to remove Petitioner or provided any concrete plans to effectuate Petitioner's removal, and it is unclear if they have identified a third country. As the First Circuit recently observed, "an individual's right to contest removal to a country based on a fear of persecution in that country

---

[2] In his Declaration, Petitioner states "I believe I will be killed if I am removed to any third country based on my work infiltrating global terrorist networks." (ECF No. 10, Skoro Decl. at ¶ 9.) Although Petitioner may have a fear-based challenge to many third countries, it appears that Petitioner has lived safely in the United States, and the Court is unable to determine on this record whether he is likely to be tortured in all unnamed, hypothetical third countries.

means little if one does not receive prior notice of the intended removal destination and a meaningful opportunity to contest that destination."[3] *D.V.D. v. U.S. Department of Homeland Security*, 2026 WL 2797801, at *14 (Sept. 18, 2026) (affirming the certification of a nation-wide class of aliens who would be subject to a recent third-country removal policies), *cert. granted*, No. 26-426, 2026 WL 2917860 (U.S. Sept. 29, 2026) (mem.). In *D.V.D.*, the First Circuit affirmed a lower-court judgment in favor of a class that required the Government to provide notice and an opportunity to assert a fear-based claim before a removal to a third country not listed on the removal order. The Court finds the First Circuit's reasoning persuasive and will order the following limited relief in an abundance of caution. Should Respondents seek to remove Petitioner to any third country, they shall provide effective notice of no less than 10 days in advance of any prospective removal, to Petitioner and his counsel of the specific country to which they intend to remove him and provide a meaningful opportunity to present any country-specific fear of persecution claims.

Petitioner also brings due process, *Accardi*,[4] and APA claims premised the failure to provide him with an opportunity to be heard prior to his re-detention and the failure to issue an order of supervision prior to or following his detention on August 3, 2026. (ECF No. 9, Amended Complaint at ¶¶ 45-51, 61-75.) According to Petitioner ICE has failed to provide any explanation or basis for the detention, and he argues that ICE violated its own regulations governing release

---

[3] The class in D.V.D. is defined as "[a]ll individuals who have a final removal order in proceedings under [various provisions of the Immigration and Nationality Act] whom the Department has deported or will be deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." 2026 WL 2797801, at *3.

[4] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

and detention pursuant to 8 C.F.R. § 241.4(l) or § 241.13(i). (*Id.* at ¶ 48.) He also argues that his detention is arbitrary and capricious under the APA. (*Id.* ¶¶ 81-87.)

In *Tazu v. Attorney General United States*, 975 F.3d 292, 298 (3d Cir. 2020), the Third Circuit rejected a similar challenge to re-detention:

> Tazu also challenges the Government's re-detaining him for prompt removal. The Government, he notes, ended his supervision period without first giving him notice and a revocation interview. By doing so, he argues, it violated the agency's rules and thus due process. *See* 8 C.F.R. § 241.4(l)(1). While this claim does not challenge the Attorney General's decision to execute his removal order, it does attack the action taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it.

At this juncture, Petitioner's prompt removal to a third country where he will not be tortured is still reasonably foreseeable; therefore, this Court is constrained by *Tazu's* clear holding and denies Petitioner's remaining due process, *Accardi*, and APA claims for lack of jurisdiction.

Finally, Petitioner's attorney submitted a letter to the Court advising that Petitioner has Type II diabetes, wears a continuous glucose monitor, and is under the care of an endocrinologist who ordered A1C testing following several high blood sugar readings, and that Petitioner missed this appointment due to his detention. (ECF No. 16.) Neither the Amended Petition nor the letter asserts a claim for relief based on Petitioner's medical condition, and the Court does not construe one. The Court notes that the Third Circuit recognized the limited viability of a such a standalone habeas claim in *Hope v. Warden*, 972 F.3d 310, 324 (3d Cir. 2020). The Third Circuit warned, however, that "in recognizing the viability of this § 2241 claim [it is] not creating a garden variety cause of action" and "a possible habeas attack on the conditions of confinement, [is] cognizable in a federal habeas action only in extreme cases," such as those which occurred during the COVID-19 pandemic. The Court held narrowly that given the "extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic, [it is] satisfied that their § 2241 claim seeking

only release on the basis that unconstitutional confinement conditions require it is not improper." *Hope*, 972 F.3d 310, 324–25. The Third Circuit did not address "whether a § 2241 claim may be asserted in less serious circumstances." *Id.* at 325 n. 5, and did not approve standalone habeas claims for immigration detainees where those detainees could seek injunctive relief in an appropriate civil action. That appears to be the case here, but should Petitioner's medical condition present extraordinary circumstances sufficient to justify habeas relief in the future, he may file a new Petition asserting a claim under *Hope*.

For all these reasons, the Court denies without prejudice the Amended Petition with respect to Petitioner's detention-related claims and grants limited relief on his third-country removal claim. The stay shall be lifted, and the matter shall be marked closed. An appropriate Order follows.

ROBERT KIRSCH
United States District Judge

Date: October 30, 2026